*Not reported.*

————◆———

BOUCHAUD, executor, &c., appellant, *agt*. DIAS & FURMAN, respondents.

### *Questions discussed.*

1. Whether a bill filed by *two creditors*, sureties on custom-house bonds, claiming, for that reason, priority above all other creditors, against a defendant, *assignee in trust* of an insolvent firm—the assignment being made to indemnify the assignee, as surety for the firm also on custom-house bonds, was defective for *want of parties?*

2. Whether, under the act of congress, (1799, *ch*. 128, § 65,) the *United States* are *preferred creditors*, where the insolvent debtor has only assigned his

property for the purpose of paying or indemnifying a *single creditor* or surety, and not for the benefit of creditors generally?

That is, was it necessary that the bill should have been filed in behalf of *all the creditors* of the insolvent firm, where its object was to establish the right of priority in the United States, with regard to custom-house bonds, paid by the complainants, and their subrogation in the place of the United States, by reason of such payment; and that the *assignee*, by reason of misapplication of the trust funds, be charged *personally?*

3. Whether, if the complainants were entitled to subrogation in the place of the United States, they were equally, with the latter, protected against the operation of the *statute of limitations?*

It appeared by the bill filed in this case, by Joseph L. Dias and Job Furman, complainants, that Henry Castro and Louis B. Henriques were formerly merchants in the city of New-York. They became insolvent, and in May, 1823, Castro, in his own name and that of Henriques, by power of attorney from him, (who was then in France,) executed to Louis A. Brunel, of the city of New-York, an assignment of a large amount of property, then in the possession and under the control of Castro and Henriques, consisting of goods, wares and merchandize, and certain leasehold estates in the city of New-York. Also certain household furniture of Castro, upon trust, after paying expenses, to pay and satisfy certain moneys paid and liabilities incurred by said Louis A. Brunel, or by the house of F. & A. Brunel, of which the said Louis A. was a member, by indorsement or otherwise, and on account of the said Castro and Henriques, and also to pay certain bonds, given by said Castro to the United States for duties and merchandize imported by Castro and Henriques, and which bonds the said Louis A. Brunel had executed as surety for said Castro.

The bill charged, on information and belief, that the assignment, although it did not purport on its face to be an assignment of all the estate of the said Castro and Henriques, yet that it was so in fact; and that it embraced and covered all their estate, real and personal, amounting to about $80,000, which amount came into the hands of said Louis A. Brunel.

That the whole indebtedness intended to be secured by the assignment was the amount of custom-house bonds, on which said Louis A. Brunel was surety, amounting to $30,636.26, and

the debts paid or liabilities incurred by the said Louis A. Brunel, or F. & A. Brunel, amounting to .$6,873.83.

That Castro and Henriques were, at the time of executing the assignment, largely indebted to the United States upon other bonds given for duties, besides those above mentioned; some of which, one of the complainants, Job Furman, had executed as surety with said Castro, and others were executed by said Castro and one Garniere Thiolliere. That judgments were recovered upon all the said bonds in favor of the United States, against said Castro, and the several parties who had executed the same with him as sureties; and charged, that by reason thereof; and in pursuance of the statute, the United States were entitled to a priority of payment over all the other creditors of said Henry Castro.

That Brunel pretended that the assigned property was insufficient to pay the debts secured by the assignment. Whereas, it was charged, on information, that without wilful default and neglect of the assignee, the property so assigned was abundant, not only to pay all the debts provided in the assignment, but also to pay all the custom-house bonds of said Castro, and also a large dividend on other debts.

Also charged that Brunel, the assignee, in disregard of the duties he owed to the sureties of said Castro, upon the United States bonds aforesaid, had paid the simple contract debts mentioned in the assignment, amounting to the sum of $6,873.83 as aforesaid, and thereby made himself personally answerable, and his estate in the hands of his executors liable, for so much money as was thus misapplied.

That Louis A. Brunel died on or about the 29th July, 1833, having a large amount of the property of Castro and Henriques assigned to him as aforesaid, in his hands, and leaving a large amount of the said bonds, as well as those in which he was surety to the United States for said Castro, as others, in which he had not joined as surety, entirely unpaid and unsatisfied. That said Brunel, previous to his death, duly made and published his last will and testament, and thereby appointed Joseph Bouchaud executor, who qualified as such, and letters testa-

mentary were granted to him by the surrogate of the city of New-York, on the 14th March, 1834. That Bouchaud took possession of the said assigned property, which was in the hands of Brunel at the time of his death.

That Bouchaud thereafter pretended that Brunel had died insolvent, yet he nevertheless paid to sundry simple contract creditors of Brunel their respective demands, without regard to the priority of the United States, under and by virtue of the bonds executed by Brunel, in their favor, and with full knowledge of the same, and also without making any distinction between the said assigned funds and property and those held by Brunel in his own right, but charged that the whole funds and property received by Bouchaud as executor had been mingled together.

And also charged that Bouchaud was personally liable to the extent of the assets received by him from the estate of Brunel.

Also charged, that the following bonds, executed by the said Henry Castro, were still due and unpaid; fourteen bonds executed by Castro as principal and Garniere Thiolliere as surety for various sums, amounting in the whole to $6,886.92. One bond executed by Castro as principal, and Louis A. Brunel as surety, for $1,027. Three bonds executed by Garniere Thiolliere as principal, and the said Henry Castro as surety, in various sums amounting in the whole to $1,910.05, the aggregate amount of said bonds being $9,823.97.

That judgments were recovered on all said bonds in the district court of the United States for the southern district of New-York, in favor of the United States against the obligors in said bonds respectively.

That the complainant, Job Furman, signed as surety for said Henry Castro three bonds for duties to the United States, March 19, 1823, for $1,153.84 each, upon which judgments had been obtained by the United States against said Furman and Castro, and which had been paid by Furman on the 15th December, 1824, the principal interest and costs amounting to $3,787.52, and charged this sum to be a lien on the estate of

Louis A. Brunel, and entitled to priority of payment, the same· as if said judgments and bonds were held by the United. States.

That the other complainant, Joseph L. Dias, was surety with. said Louis A. Brunel on two bonds executed by said Henry Cas-· tro as principal, in favor of the United States, for $2,968 each, upon which judgment had been obtained against said Dias, Brunel and Castro, in favor of the United States, March 1, 1824.· On the 7th November, 1834, the complainant Dias paid upon said last mentioned judgment $1,000, which he charged to be· entitled to priority of payment out of the estate of Castro and Henriques or Louis A. Brunel, in the same manner and to the· same extent as if held by the United States.

The bill stated that Castro, in March, 1824, obtained a discharge under " an act to abolish imprisonment for debt in certain cases," passed April 7, 1819, by which he was directed and did assign to the complainant Dias all his estate, real and personal, for the benefit of his· creditors. That in June, 1824, Henriques obtained a like discharge, and assigned all his estate, real and personal, to one Fulgence Chegaray, for the benefit of his creditors. And the bill claimed, that by virtue of these assignments all the estate of Castro and Henriques, respectively, became and was vested in the respective assignees, Dias and Chegaray.

The complainants admitted that the United States were entitled in common, with their claim as sureties of the said Henry Castro, as before stated, to a priority of payment out of the estate of said Louis A. Brunel of the bond executed by him as surety with said Castro for $1,027, as before stated, with interest and costs, and also a priority of payment over the other creditors out of the estate of Castro in the hands of Brunel, at the time of his decease, of the other bonds executed by Castro, either as principal or surety, as before stated ; and that if there were not sufficient assets in the hands of Brunel at the time of his decease, of the estate of said Castro and Henriques, then that the estate of Brunel, which came to the possession and control of said Bouchaud, his executor, was answerable for the

33

same, by reason of the misapplication by Brunel of the funds received from said assignment; and that any sums of money due from said Brunel on account of the estate of Castro, being received and held by him in trust for the United States and other creditors, who were or might be subrogated in the place of the United States, and have the same rights with them, were entitled to a priority of payment over other debts of Brunel, in case of deficiency to pay the whole.

The complainants charged that they were respectively entitled, in common with the United States, and on the same principle with them, to a priority of payment upon the bonds paid by them, or for so much thereof as was paid by them; and that in case of a deficiency of assets of the estate of Brunel to pay the full amount of said debts, before stated, as entitled to priority, that they were entitled to a rateable share or distribution with the United States of the funds or estate of Brunel, or of such part as did come, or might have come, to the hands of Bouchaud, his executor.

The bill charged a knowledge of Castro's indebtedness to the United States to Brunel when he took possession of the assigned property; also a like knowledge of Brunel's indebtedness to the United States and to Job Furman, to Bouchaud his executor, before letters testamentary were issued; also a knowledge that Brunel then had a large amount of property of Castro and Henriques in his hands; and that a large amount of custom-house bonds of said Castro remained unpaid.

That the complainants might be decreed to be paid the full amount due to them as above mentioned, with interest, on the principles before stated, from the estate of Brunel, if sufficient; if not, then out of the proper goods and effects of Bouchaud, the executor.

The United States, Joseph Bouchaud, Fulgence Chegaray, Henry Castro and Louis B. Henriques, were made defendants.

Joseph Bouchaud, one of the defendants, demurred, generally, for want of equity.

The vice-chancellor of the first circuit overruled the demurrer. His decision was appealed to the chancellor, who,

Bouchaud *agt.* Dias & Furman.

on the 28th October, 1845, affirmed the decision of the vice-chancellor, with costs. No opinion was given by the chancellor.

The defendant, Bouchaud, brought an appeal from the decree of the chancellor to this court.

*Sandfords & Porter, Attorneys, and*
*Edward Sandford, Counsel,* for appellant.

*First.* The bill is not exhibited by or in behalf of all the creditors of Castro and Henriques, nor of all the creditors of Louis A. Brunel. It sufficiently appears, upon the face of the bill, that there are other creditors, and the bill shows a want of proper parties.

1. It is a bill by simple contract creditors involving an account, not only of Castro and Henriques' estate, but also of the estate of Brunel, and all the creditors should have been made parties. (*Story's Eq. Pl.* §§ 99, 216, 105; *Willis's Pleading*, 220; *Mitford's Pleading*, 166, 167; *Fish* v. *Howland*, 1 *Paige*, 20; *Hallett* v. *Hallett*, 2 *Paige*, 19; *Wakeman* v. *Grover*, 4 *Paige*, 23, 33; *James* v. *Lansing*, 7 *Paige*, 583; *Calvert on Parties*, 28, 31; *Egberts* v. *Wood*, 3 *Paige*, 517; *Baldwin* v. *Laurence*, 2 *Sim. & Stuart*, 18, 26; *Brown* v. *Ricketts*, 3 *J. C. R.* 553.)

☞ Casneau, Thuvilliere and F. Brunel should be made parties. ☜

2. It is not necessary to name the persons who should have been made parties. That might be impossible. The rule, that a party demurring for want of necessary parties, must show who are the proper parties, from the facts stated in the bill, is complied with, when the objection to the bill is so pointed out as to amend it by making proper parties. (*Story's Equity Pl.*, §§ 543, 238; *Tourton* v. *Flower*, 3 *P. W.* 369, 371; *Pyle* v. *Pyle*, 6 *Ves.* 780, 781; *Atty. Gen.* v. *Jackson*, 11 *Ves.* 365, 69, 70; *Atty. Gen.* v. *the Corporation of Poole*, 4 *Mylne & Cr.* 17, 32; 1 *Dan. Ch. Pr.* 335, 336.)

3. Upon a demurrer to a bill for want of equity, the objection that the bill is defective for the want of parties may be taken. (*Vernon* v. *Vernon*, *Story's Eq. Pl.* § 543, *note* 3.)

It may be assigned *ore tenus*, as a ground of demurrer, or the objection may be taken at the hearing. (*Willis's Pleading*, 462, *note b ;* Pyle v. Pyle, 6 *Ves.* 780; *Darwent* v. *Walton*, 2 *Atk.* 510; *Story's Eq. Pl.* § 464; *Brinckerhoff* v. *Brown*, 6 *J. C. R.* 137, 139; *Newton* v. *Earl of Egmont*, 4 *Simons R.* 574.)

☞ Only lose costs by omitting to make question in the demurrer. ☜

*Second.* It appears from the bill that the plaintiffs seek to reach property or its proceeds, conveyed by Castro and Henriques to Louis A. Brunel, upon certain trusts expressed in the conveyance, one of which was to pay certain liabilities incurred by the house of F. & A. Brunel, of which Louis A. Brunel was a member, amounting to $6,873.83. (*Bill, folios* 6 *and* 9, *case, pages* 15 *and* 17.)

The surviving partner of that house should have been made a party, or a sufficient excuse for the omission should have been set forth in the bill.—There is an allegation that this debt was paid, (fol. 41,) and the firm is liable to contribute.

*Third.* The bill shows that the property conveyed to Louis A. Brunel by the deed, in trust, consisted, in part, of real estate. The trustee died, without making any devise or testamentary disposition of his real estate. The bill does not show that Brunel, in his lifetime, ever disposed of the real estate so conveyed to him by Castro and Henriques, and yet seeks to charge the defendant personally with the payment of the debts of Castro and Henriques, because he has paid some of the debts of Brunel. The heirs at law of Louis A. Brunel should have been made parties to the bill.

*Fourth.* The bill shows that there are creditors of Louis A. Brunel who have received the moneys to which the plaintiffs claim title, and that the estate of Brunel is insolvent. The creditors who have received the moneys so paid, and the creditors who have a right to controvert the claims set up by the plaintiffs should have been made parties. Those who have received payment may be liable to contribute. The appellant is, in no sense, a trustee for them. (*Story's Eq. Pl.* § 103, *a ;*

Bouchaud *agt.* Dias & Furman.

*Peacock* v. *Mark*, 1 *Ves. Sr.* 127, 131; *Van Cleef* v. *Sickles*, 5 *Paige*, 505; *David* v. *Frowd*, 1 *Mylne & Keen*, 200.)

*Fifth.* Upon the death of Louis A. Brunel, in 1833, the trust estate conveyed to him .by Castro and Henriques did not pass to the appellant as his personal representative, but the trust, so far as it was then unexecuted, vested in the court of chancery. The appellant, executor, is not accountable to the plaintiffs therefor; but a proper person should have been appointed to execute the trust. (1 *Rev. Stat.* 730, § 68; *David* v. *Frowd*, 1 *My. & K.* 200.)

☞ Thus far parties—want of. ☜

*Sixth.* If the bill be regarded as sufficient in respect to parties upon the case stated therein, the plaintiffs did not acquire any *liens* upon the assigned fund. (*United States* v. *Fisher*, 2 *Cranch*, 358, 390; *Beaston* v. *The Farmers' Bk. of Delaware*, 12 *Peters*, 102, 128, 133.)

☞ No lien on property—debtor might sell. ☜

*Seventh.* The case stated by the bill does not show that the United States ever acquired any right of *priority* against the property of Castro and Henriques. Brunel obtained the legal title, and his equity was equal to other sureties. (*U. S.* v. *Hove*, 3 *Cranch*, 73, 91; *Prince* v. *Bartlett*, 8 *Cranch*, 431; *Conard* v. *The Atlantic Ins. Co.* 1 *Peters R.* 439; *Conard* v. *Nicholl*, 4 *Peters*, 308; *Boent* v. *Bank of Washington*, 10 *id.* 596; *Beaston* v. *Farmers' Bk. of Delaware*, 12 *id.* 133, 135; *U. S.* v. *Shelton*, 1 *Brock. C. C. R.* 517; *U. S.* v. *McLellan*, 3 *Sumner's R.* 345, 352–54; *Thelluson* v. *Smith*, 2 *Wheat.* 396, 424; *U. S. Stat. at large*, 515; *Act*, 1797; *p.* 263, *yr.* 1792; *p.* 42, *yr.* 1789, § 21; *p.* 169, *yr.* 1796, § 45; *p.* 263, § 18.)

*Eighth.* As against the appellant, and the estate of Brunel, the bill does not show any right to charge the appellant with the alleged devastavit, because it is not averred that the appellant had notice of the debts due to the United States, after he became executor. (*Bill, fol.* 41, 42; *U. S.* v. *Fisher*, 2 *Cranch*, 490, *note;* 12 *Peters*, 129–30, *note above cited; Aiken* v. *Dunlap*, 16 *J. R.* 77, 85.)

*Ninth.* The claim of the plaintiff, Job Furman, set forth in

the bill of complaint, is barred by lapse of time and the statutes of limitation. His demand does not grow out of any trust, but is in hostility to it. It was a legal demand. The bill shows that the property transferred by Castro and Henriques to Brunel was of the value of $80,000; and the claims stated against it do not amount to $50,000. Furman's right of action accrued December 15, 1824, and act of congress gave him an action at law, or in equity, in his own name to recover the, moneys paid upon his bonds. (*Act of* 1792, *ch.* 27 ; 1 *Stat. at large*, 263 ; *Thelluson* v. *Smith*, 2 *Wheat.* 396, 424 ; *Act of* . 1799, *ch.* 22, § 65 ; 1 *Stat. at large*, 676.)

If his right of action against Brunel as assignee did not accrue until Brunel paid other claims out of the assigned property, the bill shows that Brunel did pay such claims in his lifetime, (*fol.* 16.) Had the United States sued in the state court, they would be bound by the limitations to actions prescribed by state laws to suitors in their own courts; and congress has no constitutional power to bind state legislation on the subject of the limitation of actions. But if the United States be‑not subject to the statutes limiting actions, passed by the states, the plaintiffs are not exempt therefrom.

1. Because the act of congress does not give this right to sue, at any period of time, to the sureties.

2. Because where the United States have been exempted from the operation of statutes limiting actions, it has been on the ground of political prerogative, applicable only to public governments. (*United States* v. *Hoar*, 2 *Mason*, 311, 314 ; *People* v. *Gilbert*, 18 *J. R.* 227 ; *Bank of S. C.* v. *Gibbs*, 3 *McCord*, *S. C. R.* 377 ; *Bank of U. S.* v. *Planters' Bank*, 9 *Wheat.* 307.)

But if the claim of the plaintiffs be regarded as *equitable*, there was a concurrent remedy at law, and the period limited for an action at law was binding on the court of chancery. (*Murray* v. *Coster*, 20 *J. R.* 576, 585 ; *Kane* v. *Bloodgood*, 7 *J. C. R.* 90, 125, 128 ; 2 *Story's Eq. Jur.* §§ 1520, 1521, *a*, and notes ; *Humbert* v. *Trinity Church*, 7 *Paige*, 195 ; 2 *Rev. Stat.* 301, § 49 ; 3 *Rev. Stat.* 705, § 51 ; *Revisers' Notes ; Fonb. Eq.* 329,

*book I, ch.* 4, § 27, *and notes ; Jeremy's Eq. Jur.* 548 ; *Hovenden* v. *Ld. Annsley,* 2 *Sch. & Le F.* 607, 630 ; *Rayner* v. *Pearsall,* 3 *J. C. R.* 578 ; *Ray* v. *Bogert,* 2 *John. Cas.* 432 ; *Moers* v. *White,* 6 *J. C. R.* 360, 369 ; *Kingsland* v. *Roberts, exr.* 2 *Paige,* 193.)

*Tenth.* Job Furman was improperly joined as a plaintiff, and this objection may be taken on general demurrer. (*Story's Eq. Pl.* 416, *note* 3.)

*Eleventh.* The bill of complaint does not show any equity against the appellant. There is no pretence that he has any assets unadministered.

*Twelfth.* The decree appealed from should be reversed. The demurrer should be allowed, and the bill of complaint dismissed with costs. (1 *Paine,* 627.)

☞ *Reply.*—U. S. have never appeared in the suit, and have nothing to do with the controversy. Our appeal is against Dias and Furman, and U. S. have nothing to say. (8 *Peters,* 362 ; 1 *Baldwin,* 418, 419 ; 1 *Woodbury & Minot,* 80, 82 ; 5 *Clark & Finn.* 1, 15, 16 ; *Story on Confl. Laws,* §§ 576–580 ; 1 *Brock.* 203 ; 16 *Peters,* 631–5.) ☜

*Francis F. Marbury, Attorney, and*

*John L. Mason, Counsel,* for respondents.

*Benjamin F. Butler, District Attorney, United States, for Southern Dictrict of New-York,* for the defendants, *United States.*

☞ 10 *Paige,* 445, (opinion,) bill before it was amended. ☜

*First.* The amended bill of complaint in this cause is not defective for want of parties.

1. It is not a bill filed in behalf of all the creditors of Castro and Henriques.

2. Nor is it filed for an account of the manner in which the trusts of the assignment of Castro and Henriques have been executed.

3. But it is filed in behalf of a particular class of creditors, who are entitled to a priority above all others, viz., sureties of Castro on bonds to the United States. (1 *U. S. Statutes at large,*

*p.* 515, *Act of* 3d *March,* 1797, *sec.* 5; *id. p.* 676, *Act of March* 2, 1799, *sec.* 65; *Hunter* v: *United States,* 5 *Peters,* 172.)

4. Those persons who stand in the same situation as to their rights or claims on the fund are alone necessary parties complainant. (*Hallet* v. *Hallet,* 2 *Paige,* 19; *Egberts* v. *Woods,* 3 *Paige,* 517–20; *Burney* v. *Morgan,* 1 *Sim. & Stu.* 358.)

☞ *Sandford's Second, Third* and *Fourth points* not made before the chancellor. 1 *Barb. Ch. Pr.* 396. ☜

*Second.* The allegations of the bill are sufficient to establish the right of priority in the United States with regard to the custom-house bonds paid by the complainants, and their subrogation in the place of the United States by reason of such payment. (1 *U. S. Statutes at large, pp.* 515, 676.)

*Third.* The bill also shows a case entitling the complainants to the discovery and relief sought thereby against the defendant.

*Fourth.* The statutes of limitation of this state have no application to demands like those of the complainants, because,

1. Claims of the United States are not affected by such statutes. (*United States* v. *Buford,* 3 *Peters,* 12; *United States* v. *White,* 2 *Hill,* 59; *People* v. *Gilbert,* 18 *Johns.* 227.)

2. The complainants, as sureties on custom-house honds, are subrogated to all the rights and remedies which the United States possessed, and are equally with them protected against the operation of statutes of limitation. (1 *U. S. Statutes at large, p.* 676; *Pitman's Law of Principal and Surety,* 24 *Law Lib. U. S. p.* 132, *and cases there cited.*)

On the supposition that the statute of limitations does apply to such cases as the present—then we say,

*Fifth.* The claims of the plaintiffs are equitable demands and cognizable only in a court of equity, and therefore the only limitation that can apply to them is the limitation of *ten years* to bills for relief in cases of trusts not cognizable at common law. (2 *R. S. p.* 302, 1*st ed., sec.* 52; *Dias* v. *Brunel's exrs.* 24 *Wend.* 9; 1 *Paine,* 629.)

*Sixth.* But this statute being an entirely new statute, was prospective merely, and does not affect demands already in existence. (*Johnson* v. *Burrell,* 2 *Hill,* 238; 2 *R. S. p.* 248,

Bouchaud *agt*. Dias & Furman.

*1st ed.* § 129; *Millard* v. *Whitaker*, 5 *Hill*, 408; *Fairbanks* v. *Wood*, 17 *Wend*. 329; 3 *R. S.* 704, *Revisers' notes* ; *Dash* v. *Van Kleeck*, 7 *Johns*. 493.)

*Seventh.* At all events, the statutory bar can only commence with the enactment of the new statute, that is, on the first January, 1830. (*Sayre* v. *Wisner*, 8 *Wend*. 661, *and cases there cited; People* v. *Supervisors of Columbia*, 10 *Wend*. 363; *Cases cited under the last point.*)

*Eighth.* Louis A. Brunel, the testator of the defendant, having died on the 29th of July, 1833, the operation of the statute was suspended for eighteen months, that is, until the 29th of January, 1835, and the ten years' limitation, supposing it to affect the case, did not expire until July, 1841, whereas the original bill was filed January 23, 1841. (*Wenman* v. *Mohawk Ins. Co.*, 13 *Wend*. 267; *Howell* v. *Babcock's exrs.*, 24 *Wend*. 488; *Reynolds* v. *Collins*, 3 *Hill*, 36.)

*Ninth.* The decree of the chancellor should be affirmed with costs.

☞ Brunel was a surety in some form for all the debts which the assignment required him to pay. ☜

☞ *B. F. Butler*, district attorney, southern district, New-York, appears for the U. S.—I admit that on demurrer for want of equity may object *ore tenus* that there is a want of parties. But should not be allowed to make question here not made before the chancellor. (1 *Barb. Prac.* 396; 18 *J. R.* 558; 1 *Bland's Rep.* 14; 2 *Sch. & Lef.* 689, 712; 9 *J. R.* 591, 612; 2 *H.* 161.)

I admit it may be fairly inferred that bonds of Casneau and Thuvilliere have been paid—but there is nothing to show that *they* made the payment, and so they are not necessary parties.

No presumption that they paid, but the contrary.

Don't appear Brunel had any partner; he used the name of a firm—common case, though partner dead.

Is the case within the statute? ☜

DECISION.—*Decree reversed and bill dismissed, with costs in the court of chancery.*

*For reversal :* BRONSON, GRAY, RUGGLES, WRIGHT, JOHNSON and GARDINER. *For affirmance:* JEWETT. JONES *gave no opinion.*

NOTE.—The court *held*, BRONSON, J., delivering the opinion, that the provision of the act of congress, (1799, *ch.* 128, § 65,) so far as it touched this question, only gives a priority to the United States in cases of insolvency, where a " debtor, not having sufficient property to pay all his or her debts, shall have made a voluntary assignment thereof, for the benefit of his or her creditors." And that this provision never had been and never should be carried beyond cases where the debtor had made an assignment for the benefit of his *creditors in general.* Here the assignment was made for the benefit of Brunel alone. The bill could not be maintained

*Reported 1 Comstock, 201.*